UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>DAVID ANTONIO TICAS,<br><br>        Defendant. | Case No. 1:21-CR-00601-JDB |

### DEFENSE SENTENCING MEMORANDUM

Defendant David Antonio Ticas, by and through his attorney of record, Deputy Federal Public Defender Lisa LaBarre, hereby files a memorandum setting forth his position regarding sentencing. For the reasons outlined below, Mr. Ticas respectfully requests the Court impose a sentence of 14 days' home detention without further probation—a sentence sufficient, but not greater than necessary, to achieve the purposes of sentencing in this case.

**I.  INTRODUCTION**

Before the Court is David Antonio Ticas, a 40-year old veteran of the United States Marine Corps. Mr. Ticas honorably served this country for approximately fifteen years, which included service after the September 11, 2001 attacks and a tour of duty in Iraq. Mr. Ticas is medically disabled as a result of his military service, with a 70% disability rating as a result of PTSD, and a 20% disability rating as result of shoulder pain. Mr. Ticas now lives with his wife and is raising his children while attending school at California State University, Fullerton.

For Mr. Ticas, the events of January 6, 2020 stand as a stark outlier on an otherwise clean record, and a mistake that he will regret for the rest of his life. Mr. Ticas understands this and accepts responsibility for his conduct on that day. Mr. Ticas did not destroy or vandalize property, threaten anyone, or injure anyone in connection with his entry into the Capitol. Furthermore, this impulsive act was truly an aberration in an otherwise upstanding life.

1

As discussed in detail below, Mr. Ticas's conduct, exemplary background, lack of criminal history, acceptance of responsibility, and life circumstances support a sentence of home detention.

## II. LEGAL STANDARD FOR SENTENCING

The Supreme Court has consistently held that federal judges should impose sentences that are not greater than necessary to satisfy the statutory purposes of sentencing, consider all the characteristics of the offender and circumstances of the offense, reject advisory guidelines that are not based on national sentencing data and empirical research, and serve their function in the constructive evolution of responsible guidelines. *See United States v. Booker*, 543 U.S. 220 (2005); *Rita v. United States*, 127 S. Ct. 2456 (2007); *Gall v. United States*, 128 S. Ct. 586 (2007); *Kimbrough v. United States*, 128 S. Ct. 558 (2007); *Spears v. United States*, 129 S. Ct. 840 (2009); *Nelson v. United States*, 129 S. Ct. 890 (2009).

The applicable sentencing statutes provide that a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to achieve the objectives of sentencing. *See* 18 U.S.C. §§ 3553(a), 3582(a), and 3661. In arriving at the appropriate sentence, § 3553(a) directs sentencing courts to consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of the offender; (3) the need to impose a punishment that reflects the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (4) to afford adequate deterrence; (5) to protect the public from further crimes; (6) to provide the defendant with needed education, vocational training, medical care or other correctional treatment; (7) the kinds of sentences that are available; and (8) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a)(1), (2), (3), (4), (6).

## III. PURSUANT TO 18 U.S.C § 3553(a) THIS COURT SHOULD IMPOSE A SENTENCE OF HOME DETENTION.

### A. History and Characteristics of Mr. Ticas.

A sentence of home detention is reasonable and appropriate in this case based on Mr. Ticas's history and characteristics.

1.      **Mr. Ticas's Origins in El Salvador and Separation from his Parents**

Mr. Ticas was born in El Salvador in 1981.  In an attempt to improve their economic outlook, Mr. Ticas's parents and older siblings left for the United States without Mr. Ticas when he was only two years old.  Mr. Ticas was then raised by his maternal grandmother in El Salvador, and he eventually lawfully immigrated to the United States when he was seven years old.  As a result of this experience, Mr. Ticas indicated that he did not really know his parents and older siblings until later in his childhood.  After being reunited with his parents, Mr. Ticas would cry at being separated from his grandmother.

Mr. Ticas lived through the 1986 San Salvador earthquake, an earthquake that caused considerable damage to the capital city and caused between 1,000 and 1,500 deaths.[1]  This was a traumatic experience for Mr. Ticas and he remembers it vividly.

2.      **Mr. Ticas Honorably Served in the United States Marines with Excellent Performance Reviews**

After graduation from high school in June 2000, Mr. Ticas enlisted in the United States Marines.  In the Marines, Mr. Ticas worked primarily in supply and logistics, as well as in community outreach and instruction/training.  Mr. Ticas was deployed to Fuji, Japan during the 9/11 attacks, and in 2003 he was deployed to Iraq.  Mr. Ticas was also deployed to Iraq from January-July 2003.  *See* Exhibit A, documenting Mr. Ticas's presence aboard the USS Tarawa heading to Kuwait, dated February 18, 2003.

In 2006 Mr. Ticas returned to Iraq, living and working at the Fallujah Civil Military Command Center.  Exhibit B, commandant's guidance report.  Mr. Ticas was commended for the quality of his service and received an assessment of "One of the Many Highly Qualified" with additional comments "Sergeant Ticas is a superb NCO. … He has stood watch, manned QRF posts and contributed to overall security of CMOC.  Sgt Ticas is highly recommended for

---

[1] https://en.wikipedia.org/wiki/1986_San_Salvador_earthquake

promotion." *Id.* at 5.  The reviewing officer further commented that Mr. Ticas is "Quiet, diligent, and effective.  Worked hard to keep the CMOC running smoothly and efficiently.  Cooperated well and kept his chain of command informed.  Led his Marines by example and with much concern for their welfare." *Id.*

After Iraq, Mr. Ticas was stationed in Pasadena, California to serve as his battalion's Supply Administrative Chief.  Exhibit C, commandant's guidance report.  Mr. Ticas was again highly regarded for his service and received an assessment of "One of the Many Highly Qualified." *Id.* at 5.   In his review, his evaluators commented that "Sgt Ticas is mature, well regarded, and technically proficient Supply Administration Chief." *Id.*  Moreover, the reviewing officer commented that Mr. Ticas is "professional, knowledgeable, and hard-working.  … This developing Marine leader possesses unlimited potential." *Id.*

Mr. Ticas was then promoted to Staff Sergeant and was stationed in Camp Pendleton as his unit's Logistics Chief.  While stationed at Camp Pendleton Mr. Ticas was sent to Honduras and El Salvador to conduct assessments on projects that Southern Command had financed.  Exhibit D, commandant's guidance report.  Unfortunately, around this time Mr. Ticas sustained a shoulder injury in connection with training.  *Id.* at 5.  Despite this injury, Mr. Ticas received an evaluation stating "Excellent performance as the I-I and reserve unit Supply/Fiscal Chief" and "Solid Supply Chief - retain and promote with peer group." *Id.*

### 3. Mr. Ticas's PTSD Diagnosis and Medical Retirement

As part of his duties, Mr. Ticas had the unfortunate task of notifying the next of kin of Marines killed in action and participating in funeral details.  Exhibit C at 1.  In July 2010, Mr. Ticas notified the parents of a Marine killed in action in Afghanistan, and the experience affected Mr. Ticas deeply.  These duties had a lamentable effect upon Mr. Ticas's psyche: he experienced significant anxiety, episodes of depression, and mood swings.  Mr. Ticas received an official diagnosis of post-traumatic stress disorder (PTSD) and was prescribed medication by doctors on base, but it did not help and actually made Mr. Ticas's mental health worsen.  PSR ¶ 55.

In the mid-2010s Mr. Ticas's physical health also began to decline. Mr. Ticas was plagued by increasing pain in his shoulder, and in April 2014 Mr. Ticas underwent surgery to repair it. After months of post-surgery physical therapy, Mr. Ticas continued to experience significant chronic pain. Ultimately, Mr. Ticas's PTSD and physical pain were deemed so severe that he was eligible for medical retirement. Exhibit E, certificate of release or discharge from active duty; Exhibit F, United States Marine Corps certificate of retirement and letter re: disability. During his Marine service, Mr. Ticas was awarded numerous medals and decorations, including the Marine Corps Good Conduct Medal, Selected Marine Corps Reserve Medal, Iraq Campaign Medal (with one star), and four Letters of Appreciation. *Id.*; PSR ¶ 65 (full list of awards).

According to the Marine Medical Board, Mr. Ticas is considered 70% disabled as a result of PTSD, and 20% disabled as a result of his right shoulder pain. Exhibit G, findings of the physical evaluation board proceedings. The board further found that these disabilities were incurred while Mr. Ticas was in service in the Marines. *Id.* All board members concurred in this evaluation, and the board stated that his disability may be permanent. *Id.*

Mr. Ticas first married in 2003 and had two children from this marriage. While stationed in Pasadena Mr. Ticas met his present wife Nadine, and they married in 2012. Mr. Ticas and Nadine have one child together, as well as Nadine's child from a previous marriage. Mr. Ticas's family is extremely close-knit. Exhibit H, family photograph from 2020. Recently, Mr. Ticas has been working towards his bachelor's degree at California State University, Fullerton, and he is close to earning his degree. PSR ¶ 63. Mr. Ticas has already earned his associate's degrees in political science, construction management, and carpentry from Fullerton College in 2019 and 2020. Exhibit I, diplomas from Fullerton College. Mr. Ticas has been raising his children as a stay-at-home father while taking classes towards his bachelor's degree.

B.   **The Nature and Circumstances of the Offense.**

The instant charges are an aberration in an otherwise upstanding life. Although Mr. Ticas entered the Capitol building without permission, he did not cause any damage to property or

injury to persons.  Mr. Ticas entered through an open door, and Mr. Ticas limited himself to the first floor hallways and gathering areas.  Mr. Ticas did not enter any of the Capitol building offices or the House or Senate Chambers.  Indeed, Mr. Ticas is shown respecting the instructions of a Capitol officer to keep out of a certain area.

Mr. Ticas recognizes President Biden as the current Commander in Chief of the United States military.  Exhibit J, Mr. Ticas's letter to the Court.  Mr. Ticas came to the Capitol not to be violent or destroy property (and to which he did neither), but to express his grievances with our government and our electoral system, as is every citizen's right.  *Id.* (including Mr. Ticas's academic essays for his sociology classes at Cal State Fullerton.)   Mr. Ticas was undoubtedly emotional during his time in the Capitol, but his emotions simply mirrored the rapidly escalating emotion of the crowd present that day.  Mr. Ticas admitted his wrongdoing by entering the Capitol when he should not have in his plea agreement with the government.  Mr. Ticas nevertheless did not go there for violence, and he did not engage in violence.

Mr. Ticas has been compliant with the conditions of release since being placed on bond. Mr. Ticas honorably served our country and is permanently disabled as a result.  For this reason, the Court should impose a sentence of home detention, an appropriate sentence based on Mr. Ticas's conduct on January 6, 2020.

### C. The Need to Impose a Punishment that Reflects the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment for the Offense.

A sentence of home detention is a meaningful and significant sentence for Mr. Ticas, a person who has no criminal history and who has served this country honorably.  This sentence is sufficient to reflect the seriousness of Mr. Ticas's conduct and would provide just punishment for his actions.  This sentence will ensure that Mr. Ticas faces proportionate consequences for his actions on January 6, 2020, while promoting respect for the law through just punishment.

IV.  CONCLUSION

      Based upon the above-stated factors, the Court should impose a sentence of home detention.  Such a sentence would be sufficient, but not greater than necessary, to achieve the purposes of sentencing in this case.

                                          Respectfully submitted,

                                          CUAUHTEMOC ORTEGA
                                          Federal Public Defender

DATED:  July 7, 2022              By  */s/ Lisa LaBarre*
                                          LISA LABARRE
                                          Deputy Federal Public Defender
                                          (California Bar No. 246429)
                                          312 E. 2nd Street
                                          Los Angeles, CA 90012
                                          Telephone:  (213) 894-2854
                                          (E-Mail:  Lisa_Labarre@fd.org)